IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 4, 2025

## JOHN LINDBERG v. TCIX DISCIPLINARY BOARD ET AL.

**Appeal from the Chancery Court for Hickman County**
**No. 23-CV-7731      Michael E. Spitzer, Chancellor**

——————————————————————

### No. M2024-01642-COA-R3-CV

——————————————————————

An inmate at Turney Center Industrial Complex ("TCIX") was convicted of introducing drugs into the complex by the prison's disciplinary board. After failed administrative appeals, the inmate filed a petition for a writ of certiorari in the Chancery Court for Hickman County. The inmate alleged that the TCIX Disciplinary Board and TCIX staff violated multiple disciplinary policies and that there was no material evidence to support his conviction. The trial court denied his petition. This appeal followed. Discerning no reversible error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which KENNY W. ARMSTRONG and KRISTI M. DAVIS, JJ., joined.

John Lindberg, Only, Tennessee, Pro Se.

Jonathan Skrmetti, Attorney General and Reporter, and Jacobs M. Gilbert, Assistant Attorney General, for the appellee, Turney Center Disciplinary Board.

### OPINION

#### FACTS AND PROCEDURAL HISTORY

On February 7, 2023, TCIX inmate John Lindberg was placed into segregation pending a disciplinary hearing on allegations that he attempted to introduce drugs into the institution. Mr. Lindberg was released from segregation six days later.

On February 26, 2023, the TCIX Disciplinary Board chairperson executed a Contemporaneous Record of Confidential Informant Reliability, form CR-3510, that stated that "testimony of a confidential witness was substantially relied on by the board to reach its decision in this matter." The form did not identify the information that the witness

provided, but it stated that the informant's reliability was verified by a sworn statement before the Board by the investigating officer, who believed the informant's information to be reliable because it was independently corroborated on specific material points.

On February 27, 2023, Mr. Lindberg was issued a disciplinary report alleging that he and another inmate tried to introduce 80 pages of paper that tested positive for K2, fentanyl, and methamphetamine through mail addressed to Mr. Lindberg that was falsely labeled as privileged legal correspondence. The Disciplinary Report stated that the incident occurred at 11:00 a.m. on February 7, 2023, and it was completed and signed by the investigating officer.

At his hearing on March 9, 2023, Mr. Lindberg pleaded not guilty. Mr. Lindberg argued that he did not arrange for the drugs to be sent, did not know the drugs were being sent, and did not receive, sign for, or otherwise accept the mail. Mr. Lindberg also pointed out that he was not given an opportunity to refuse the mail. Still, the Board found Mr. Lindberg guilty based on the Disciplinary Report, confidential information, and oral statements by the investigating officer. The Board sanctioned Mr. Lindberg by imposing a twelve-month package restriction, a three-month visit restriction, and a $5.00 fine.

Mr. Lindberg's appeal to the Warden was denied on March 19, 2023, and his subsequent appeal to the Commissioner of the Department of Corrections was denied on April 6, 2023.

In May 2023, Mr. Lindberg commenced this action by filing a verified petition for writ of certiorari in the Chancery Court for Hickman County, Tennessee. Mr. Lindberg alleged that TCIX and the Disciplinary Board (collectively, "Defendants") violated several disciplinary policies and that there was no material evidence to support his conviction.

After briefing by the parties, the trial court denied Mr. Lindberg's requested relief.

### STANDARD OF REVIEW

This court has explained the relevant standard of review as follows:

Review under a writ of certiorari is limited to whether the inferior board or tribunal exceeded its jurisdiction or acted illegally, arbitrarily, or fraudulently. The reviewing court is not empowered to inquire into the intrinsic correctness of the board's decision. Our Supreme Court has held that a common-law writ of certiorari may be used to remedy: (1) fundamentally illegal rulings; (2) proceedings inconsistent with essential legal requirements; (3) proceedings that effectively deny a party his or her day in court; (4) decisions beyond the lower tribunal's authority; and (5) plain and palpable abuses of discretion. The reviewing court does not weigh the evidence, but must uphold the lower tribunal's decision if the

lower tribunal acted within its jurisdiction, did not act illegally or arbitrarily or fraudulently, and if there is any material evidence to support the [tribunal's] findings. A board's determination is arbitrary and void if it is unsupported by any material evidence. Whether there existed material evidence to support the board's decision is a question of law which should be determined by the reviewing court based on the evidence submitted.

This Court must review a trial court's conclusions of matters of law *de novo* with no presumption of correctness. Because our review of the board's determination is no broader or more comprehensive than that of the trial court with respect to evidence presented before the board this Court will not inquire into the intrinsic correctness of the board's decision, but will uphold the decision if it was reached lawfully and in a constitutional manner.

*Ross v. Tennessee Dep't of Correction*, No. W2008-00422-COA-R3-CV, 2008 WL 4756873, at *2–3 (Tenn. Ct. App. Oct. 30, 2008) (citation modified). Violations of disciplinary policies "may warrant judicial relief if the inmate can show 'substantial prejudice as a result and that the error would have affected the disposition of the case.'" *Kilburn v. Tennessee Dep't of Correction*, No. M2010-01362-COA-R3-CV, 2011 WL 532212, at *3 (Tenn. Ct. App. Feb. 14, 2011) (citing TDOC Policy No. 502.01(V)).

**ANALYSIS**

I. VIOLATION OF TDOC POLICY NO. 502.01(VI)(G)(6)

First, Mr. Lindberg contends that Defendants violated TDOC Policy No. 502.01(VI)(G)(6) and (7) by segregating him "pending an investigation" after the investigation was already complete and by not telling him "of the delay or an expected completion date of the investigation." Policy No. 502.01(VI)(G) provides:

6. No inmate should be held for more than seven calendar days pending investigation. Any delay shall be reviewed/approved/denied by the Warden/Superintendent/designee (CM at privately managed facilities). The inmate shall be notified of any delay in the investigation and the expected completion date of the investigation.

7. Immediately upon conclusion of the investigation, the inmate should be charged with an infraction or released from segregation. Procedures specified for notifying the inmate of the charges should be followed. The time limit within which the disciplinary hearing shall convene (as provided in Section VI(A)(6) above) should be measured from the time the investigation is completed and the inmate is charged with the infraction.

TDOC Policy No. 502.01(VI)(G)(6)–(7).

Mr. Lindberg argues that he was prejudiced by his delayed segregation and lack of notice because "to this date [he] does not know when the alleged violation occurred and had he, he may have been able to retrieve the mail room records."

The record, however, does not support Mr. Lindberg's recitation of the facts. The Disciplinary Report states that he was segregated **pending a disciplinary hearing**—not the completion of the investigation. Therefore, Mr. Lindberg has not alleged a violation of TDOC Policy No. 502.01(VI)(G)(6) and (7).

## II. TDOC POLICY 507.02(VI)(C)(1)

Next, Mr. Lindberg contends that Defendants violated TDOC Policy No. 507.02(VI)(C)(1) by not affording him an opportunity to refuse the mail that contained contraband. Policy No. 507.02(VI)(C)(1) provides:

> Incoming privileged mail is opened only by a staff member in the presence of the inmate addressee in order to examine the contents for contraband, and then documented. All mail which has papers which are bound together by metal clips are disassembled by removing the metal clip. The staff members must not read the privileged mail or listen to legal tapes unless the Warden/Superintendent has, on the basis of reasonable suspicion, determined that privileged mail or tapes may contain information relating to criminal activity. The privileged mail/tape may be read or listened to outside the presence of the inmate if doing so is necessary to avoid compromising an on-going criminal investigation. A bound ledger is maintained by mail room staff that lists each piece of privileged mail received/sent, the date/time inspected and delivered, and recipient's signature. Mail relating to the implementation of Policy 11.511.05, Tennessee Offender Driver's License and State Identification Only License, is not considered privileged mail.

TDOC Policy No. 507.01(VI)(C)(1).

Mr. Lindberg argues that, had he been allowed to refuse the mail, "it would have been proof of his lack of involvement with the contraband."

It is undisputed that the contraband mail was labeled as privileged and that TCIX staff opened the mail outside the presence of Mr. Lindberg. This was arguably a violation of Policy No. 507.01(VI)(C)(1). *See State v. Davidson*, No. E2013-00394-CCA-R3DD, 2015 WL 1087126, at *37 (Tenn. Crim. App. Mar. 10, 2015) ("To be sure, correspondence between the defendant and his counsel should not have been opened and read by members of the KCSO outside the defendant's presence . . . ."), *vacated in part on other grounds,* 509 S.W.3d 156 (Tenn. 2016). But even if it was a violation, the violation did not prejudice

Mr. Lindberg. TDOC Policy No. 507.01(VI)(C)(1) does not prevent prison staff from opening privileged mail; it simply requires staff to open privileged mail in the inmate's presence. And during the disciplinary hearing, Mr. Lindberg raised the defense that he did not know the contraband was being sent to him. The Board did not find Mr. Lindberg's purported ignorance to be credible, and we will not reweigh the evidence on appeal. *See Watts v. Civ. Serv. Bd. for Columbia*, 606 S.W.2d 274, 277 (Tenn. 1980) (courts do not weigh the evidence when considering writ of certiorari).

### III. TDOC POLICY NO. 502.01(VI)(A)(5)

Mr. Lindberg also contends that the Defendants violated TDOC Policy No. 502.01(VI)(A)(5) because the Board Chairperson was "directly involved in the investigation." Policy No. 502.01(VI)(A)(5) provides:

> 5. No employee shall be permitted to sit on the panel of the board hearing a given case if any of the following conditions exist:
>
>     a. He/she is the reporting employee.
>
>     b. He/she participated directly in the investigation.
>
>     c. He/she has personal knowledge concerning the case, except in those instances where knowledge of the incident is so widespread as to be known by most employees (i.e., common knowledge).
>
>     d. He/she has a personal interest in the outcome of the case.
>
>     e. He/she is the inmate's assigned counselor, unit sergeant, or unit manager.

TDOC Policy No. 502.01(VI)(A)(5).

Mr. Lindberg argues that Defendants violated this policy because the record contains a Contemporaneous Record of Confidential Informant Reliability, or CR-3510 form, that was signed by two members of the Disciplinary Board one day before Mr. Lindberg received the Disciplinary Report and eleven days before his hearing.

The CR-3510 Form states that "[t]he testimony of a confidential witness was substantially relied on by the board to reach its decision" and that "[t]he reliability of the informant was verified" by a "[s]worn statement before the board by [the] investigating officer, Dustin Mackin, that he/she believes the confidential informant(s) information to be reliable because it has been independently corroborated on specific material points." This does not show that any member of the Board took part in the investigation. There is therefore no basis to conclude that Defendants violated TDOC Policy No. 502.01(VI)(A)(5).

## IV. TDOC POLICY NO. 502.01(VI)(F)(3)

Mr. Lindberg further contends that Defendants violated TDOC Policy No. 502.01(VI)(F)(3), which identifies circumstances in which inmates must be segregated. Mr. Lindberg argues that Defendants violated this policy by placing him in segregation because none of the listed circumstances applied to him. We pretermit this issue because Mr. Lindberg has articulated no significant prejudice caused by the alleged violation.

## V. MATERIAL EVIDENCE

Last, Mr. Lindberg contends that there is no material evidence in the record to support the Board's decision. Mr. Lindberg argues that the CR-3510 Form has no description of the information that the confidential witness provided and that the Disciplinary Report alleges no actions taken by Mr. Lindberg.

In disciplinary proceedings, guilt "does not have to be proven beyond a reasonable doubt, but only by a preponderance of the evidence," and "the disciplinary board is entitled to consider any evidence it finds reliable, whether or not such evidence would be admissible in a court of law." *Keen v. Tennessee Dep't of Correction*, No. M2007-00632-COA-R3-CV, 2008 WL 539059, at *5 (Tenn. Ct. App. Feb. 25, 2008).

Here, the Disciplinary Report Hearing Summary lists "Incident Report" and "Confidential Information" as "Witness(es) Against Offender." Under "DISPOSITION AND A STATEMENT OF REASONS WHICH SUPPORTS THAT DECISION," the Board includes "Oral Statements From Reporting Official And Confidential Information." It is clear from the Disciplinary Report Hearing Summary that the Board relied on the Disciplinary Report, the confidential information that served as the basis for that report, and the reporting official's testimony.

The Disciplinary Report indicates that on February 7, 2023, TCIX received "fictitious legal mail addressed to offender Lindberg" that contained "80 pages of paper that tested positive for K2, Fentanyl, and Methamphetamine." The Report states that Lindberg was charged with a violation of Tennessee Code Annotated § 39-16-201 and that confidential information would be provided to the Board. But the CR-3510 Form does not indicate what the confidential information was. That said, the fact that the mail was addressed to Mr. Lindberg is material evidence from which the Board could infer Mr. Lindberg's guilt.

## IN CONCLUSION

For these reasons, we conclude that the Board "acted within its jurisdiction, did not act illegally or arbitrarily or fraudulently," and that its findings were supported by "material evidence." *Jackson v. Tennessee Dep't of Correction*, No. W2005-02240-COA-R3CV,

2006 WL 1547859, at *3 (Tenn. Ct. App. June 8, 2006). Accordingly, the trial court's judgment is affirmed, and this matter is remanded with the costs of appeal assessed against appellant, John Lindberg.

_____
FRANK G. CLEMENT JR., P.J., M.S.